UNITED STATES of America, Plaintiff,

v.

CERTAIN REAL PROPERTY AND PREMISES KNOWN AS 38 WHALERS COVE DRIVE, BABYLON, NEW YORK, Defendant.

No. 88 C 3550.

United States District Court,
E.D. New York.

Sept. 18, 1990.

Andrew J. Maloney, U.S. Atty. (Stephen J. Riegel and Paul F. Millus, of counsel), Brooklyn, N.Y., for plaintiff.

Richard B. Lind, New York City, for claimant Edward J. Levin.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

This action arises from an order under 21 U.S.C. § 881(a)(7) of the Comprehensive Drug Abuse and Control Act of 1970 authorizing seizure of a condominium alleged to have been used to "facilitate" two cocaine sales. Claimant Edward Levin moves to dismiss the complaint. The United States cross-moves for summary judgment.

Levin argues that his property was not used to "facilitate" a drug transaction under § 881(a)(7) and that the forfeiture would violate his rights under the Eighth Amendment and the Double Jeopardy and Due Process clauses of the Fifth Amendment to the United States Constitution.

### I.

The critical facts are undisputed.

Levin, the owner of the condominium, was arrested for three sales of cocaine to undercover agents. On July 6, 1988, a confidential informant and a Suffolk County police officer, Joseph Emiddio, went to Levin's home and bought one and one half grams of cocaine for $150. Levin says that the confidential informant requested that the sale take place in the condominium. According to Emiddio, Levin produced a half-gram packet of cocaine from a bowl in his kitchen cabinet. The second sale took place on July 20, 1988, also at Levin's home. Emiddio paid Levin $100 for a plastic vial containing one gram of cocaine, which Levin produced from the second floor of the premises. Another sale, not at issue in this proceeding, took place in Levin's car.

During the next ten weeks Emiddio called Levin several times per day to arrange further drug transactions, but Levin was unwilling. Levin also states Emiddio was aware that he had a minor drug habit, and that the small amounts of drugs Emiddio saw were clearly for Levin's personal use.

Immediately upon his arrest in October 1988 on charges of criminal sale of a controlled substance in violation of § 220.39.1 of the New York Penal Law, Levin cooperated with the Suffolk County Police, acting as intermediary in another narcotics sale held at the condominium at Emiddio's direction.

A search of the premises disclosed no drugs, weapons, or other evidence of drug trade. The United States seized the premises on November 4, 1988. In March 1989, Levin pled guilty to one count of attempted criminal sale of a controlled substance in the third degree, pursuant to Section 110.05 of the New York State Penal Law.

Since the seizure Levin and a friend have continued to reside at the premises under an "Occupancy Agreement" with the government.

## II.

The statutory provisions relating to drug abuse prevention and control are contained in 21 U.S.C. §§ 801–971. Section 853 provides for criminal forfeiture from those convicted under the statute. Section 881 provides for civil forfeiture, and section 881(a)(7), the subsection at issue here, in pertinent part, makes "subject to forfeiture to the United States":

> All real property, including any right, title, and interest . . . in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment. . .

Where the government seeks a forfeiture section 881(d), which incorporates the procedures provided for in 19 U.S.C. § 1615 for customs forfeitures, places upon it the burden to demonstrate probable cause to believe the property was used, or intended to be used, to facilitate a drug transaction punishable under federal law. Then, unless the claimant introduces evidence that the government has not met factual predicates for forfeiture, the court may grant summary judgment for the government. *United States v. The Premises and Real Property at 4492 South Livonia Road*, 889 F.2d 1258, 1267 (2d Cir.1989).

The sale by Levin of any amount of cocaine was punishable under section 841(b)(1)(C) by more than one year's imprisonment. Levin does not deny making the sales but argues that he did not use his condominium to "facilitate" their commission within the meaning of section 881(a)(7). He cites the legislative history, in particular the 1984 Senate Committee Report, explaining the addition of real property to the list of items forfeitable. The report states:

> Under current law, if a person uses a boat or car to transport narcotics or uses equipment to manufacture dangerous drugs, his use of the property renders it subject to civil forfeiture. But if he uses a secluded barn to store tons of marijuana or uses his house as a manufacturing laboratory for amphetamines, there is no provision to subject his real property to

176

civil forfeiture, even though its use was indispensable to the commission of a major drug offense and the prospect of the forfeiture of the property would have been a powerful deterrent.

S.Rep. No. 225, 98th Cong., 1st Sess. 195, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3378 (Senate Report).

Levin says that his condominium was far from "indispensable" to the two minor cocaine sales and that in any event he committed no "major" drug offense. He contends that before finding the home forfeitable, the court must find a "substantial connection" between the use of the property and the drug sales.

The court has found no decision construing the above passage from the Senate Report as suggesting that as a condition of forfeiture the court must find the property "indispensable" to the drug transaction, *see, United States v. Certain Lots in Virginia Beach,* 657 F.Supp. 1062, 1065 (E.D. Va.1987). Some courts have read the legislative history to require a finding of "substantial connection" between the property and the drug transaction. *See id.* and *United States v. $12,585,* 669 F.Supp. 939 (D.Minn.1987). But the Court of Appeals for this circuit rejected such a standard and held that there need only be a "sufficient nexus." *See United States v. One 1974 Cadillac Eldorado,* 548 F.2d 421, 423 (2d Cir.1977); *South Livonia Road,* 889 F.2d at 1269.

On two occasions claimant produced a controlled substance for sale from a place in his dwelling. The use of the premises repeatedly to sell and to safekeep drugs undoubtedly "facilitated" the ensuing sales according to the common definition of the term, "to make easier." *The Random House Dictionary of the English Language* 840 (1969). Although Levin's unrefuted affidavit says that one of the sales took place at his home on the suggestion of the police officer, he makes no contention that the presence of drugs in his home was momentary or merely fortuitous. *Cf. Certain Lots in Virginia Beach, supra,* 657 F.Supp. at 1065. The court finds a sufficient nexus between the property and the

drugs to conclude that claimant used his home to "facilitate" their sale.

■ The court rejects the argument that the statute authorizes forfeiture of property only when used to facilitate "major" transactions. The wording of the statute does not so provide. It allows forfeiture if the property is used to facilitate commission of even a single felony punishable under Title 21. As noted above, the sale of any amount of cocaine is such a felony. The Court of Appeals for this circuit has held that forfeiture may be predicated on a minute quantity of drugs. *See South Livonia Road,* 889 F.2d at 1269–70 and *United States v. One 1986 Mercedes Benz,* 846 F.2d 2, 5 (2d Cir.1988).

The government has shown that there was probable cause to believe Levin used his condominium to facilitate cocaine sales. He has not called the government's proof into question. Forfeiture in this case may produce a harsh result, rendering homeless a man whom the state court declined to incarcerate. But that is what section 881(a)(7) contemplated. *See South Livonia Road,* 889 F.2d at 1271.

### III.

#### A.

The question remains whether the statute as applied is unconstitutional.

Levin invokes several constitutional provisions.

The Double Jeopardy clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." The Eighth Amendment recites, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property without due process of law."

#### B.

■ Even if forfeiture in this case were to be regarded as a criminal "punishment," the Double Jeopardy clause does not apply.

It prohibits two criminal punishments for the same offense only where inflicted by the same sovereign. *Heath v. Alabama,* 474 U.S. 82, 87–89, 106 S.Ct. 433, 436–38, 88 L.Ed.2d 387 (1985). The United States does not subject a person to double jeopardy when it seeks a forfeiture predicated on acts already punished by the state. *See United States v. A Parcel of Land with a Building Located Thereon,* 884 F.2d 41, 43 (1st Cir.1989). Thus, even if a punishment, the forfeiture is not a punishment for the "same offense" for which the state convicted Levin.

### C.

The government may seek forfeiture of property associated with drug transactions in criminal prosecutions, e.g. 21 U.S.C. § 853, or in civil proceedings, e.g. 21 U.S.C. § 881. Where the proceeding is avowedly criminal, plainly the accused is entitled to all the procedural protections offered by the Fifth and Sixth Amendments. He also receives the substantive benefit of the Eighth Amendment's prohibitions against excessive bail or fines and cruel and unusual punishments.

Where the proceeding is labelled "civil", the chief question with which the cases have struggled is to what extent, if at all, the person whose property is at stake must be given the procedural and substantive rights accorded a person charged with crime. Frequently the decisions have turned on whether the forfeiture is deemed a "punishment".

██ In a criminal case the defendant may be punished by being fined or by being required to forfeit property, at least where the property was obtained through the crime, or was used in connection with or to facilitate the crime. *See, e.g.,* 21 U.S.C. § 853 and 18 U.S.C. § 1963(a). The only limitation is that imposed by the Eighth Amendment's prohibition of "excessive fines" or "cruel and unusual punishments." Under that amendment the criminal punishment may not be "disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 284–88, 103 S.Ct. 3001, 3006–08, 77 L.Ed.2d 637 (1983) and cases cited.

Where forfeiture is sought in a proceeding denominated as civil, the law is not so simple. *In rem* forfeiture, that is, forfeiture of the thing, grew from the ancient notion that an instrument of harm is itself culpable, and must provide expiation for the injury. *See* O. Holmes, The Common Law, Ch. 1 (1881) and the oft-quoted passage from Exodus 21:28, "[i]f an ox gore a man or a woman, and they die, he shall be stoned and his flesh shall not be eaten." The early English institution of the *deodand,* something "given to God," required that the value of an instrument of death be forfeited to the King, who would apply it to charitable uses or masses for the victim's soul. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 681 n. 16, 682, 94 S.Ct. 2080, 2090 n. 16, 2091, 40 L.Ed.2d 452 (1974). Though the *deodand* vanished from English law, the ascription of personality to offending objects persisted into the modern law of civil forfeiture. *See J.W. Goldsmith, Jr. v. United States,* 254 U.S. 505, 510–11, 41 S.Ct. 189, 190–91, 65 L.Ed. 376 (1921).

In the United States, *in rem* forfeiture was early established in federal law through navigation and customs acts allowing seizure of vessels or property used in violation of the law, a useful expedient in situations where the owner might be difficult to bring into court. *See* Note, *A Proposal to Reform Criminal Forfeiture Under RICO and CCE,* 97 Harv.L.Rev. 1929, 1933 (1984). The fiction of holding the property, rather than the owner or crew, responsible for the offense served to assure indemnity to those injured. *Malek Adhel v. United States,* 43 U.S. (2 How.) 210, 233–34, 11 L.Ed. 239 (1844); *cf. Dobbin's Distillery v. United States,* 96 U.S. 395, 24 L.Ed. 637 (1877) (forfeiture of distillery operated to defraud the government).

Even in more recent times the Supreme Court recognized that the harmful nature of a thing or the illegality of the claimant's possession of it justified its forfeiture as "contraband". *See One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965);

*cf. United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (forfeiture served to keep "potentially dangerous weapons out of the hands of unlicensed dealers").

The government makes no suggestion that Levin's condominium was contraband or somehow itself culpable. The court has thus no need to consider what vestiges of the ancient fiction remain in the law. *See United States v. Tax Lot 1500,* 861 F.2d 232, 235 (9th Cir.1988); *United States v. Huber,* 603 F.2d 387, 397 (2d Cir.1979).

The government does contend that the forfeiture cannot constitute a "punishment" within the meaning of the Eighth Amendment because this is a "civil" not a "criminal" proceeding. Such an argument based on the label affixed by the statute has already been rejected by the Supreme Court.

In *Browning–Ferris Industries v. Kelco Disposal, Inc.,* —— U.S. ——, 109 S.Ct. 2909, 2913–14, 106 L.Ed.2d 219 (1989), the Supreme Court concluded that the Eighth Amendment provided no basis for disturbing a punitive damage award in a civil jury trial. But the Court took pains to base its decision not on the proposition that the amendment applies only to criminal proceedings, but rather on historical evidence that it applies only where the government, rather than a private party, takes positive steps to punish an individual. *Id.,* 109 S.Ct. at 2920. In this case the government seeks forfeiture.

In *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Court held that in a particular case a "civil penalty" may be "so extreme and so divorced" from any compensatory or remedial interest of the government as to constitute punishment for the purpose of double jeopardy. ·

█ This was wholly consistent with the court's earlier holding, that Congress may impose "both a criminal and a civil sanction in respect to the same act or omission." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). The form of the proceeding is not conclusive. If the civil penalty is sufficiently great and sufficiently unrelated to any compensatory or remedial interest of the government, it may be deemed a punishment inflicted chiefly to deter or incapacitate. *See South Livonia Road, supra,* 889 F.2d at 1270.

As noted above, the government may seek forfeiture of real property associated with the commission of a federal narcotics felony under both civil and criminal statutes, 21 U.S.C. § 881 (1984) and 21 U.S.C. § 853 (1984), respectively. Both provisions were enacted in the Comprehensive Crime Control Act of 1984 (the Act), P.L. 98–473, 98 Stat. 1837, and both use identical language in describing real property subject to forfeiture as that "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a narcotics felony. 21 U.S.C. § 853(a)(2) and § 881(a)(7).

The legislative history shows that Congress designed the criminal provisions to serve as an alternative to civil forfeiture in all drug felony cases. Senate Report at 193 and 1984 U.S.Code Cong. & Admin. News 3182, 3376. As the purpose of the legislation was to enhance the utility of both types of forfeiture for law enforcement, the report distinguishes criminal and civil actions only in their respective procedural advantages and disadvantages, Senate Report, at 192–96 and 1984 U.S.Code Cong. & Admin.News 3375–79. One aspect of the Act's reforms was the importation of certain advantages from each proceeding into the other's scheme. For example, the Act brought real property within the scope of civil as well as criminal forfeiture, and provided a means for preliminary seizure of assets in criminal as well as in civil proceedings. *See id.*

No distinction between the purposes of civil and criminal forfeiture is apparent from the legislative history, which describes both as weapons of deterrence.

Today, few in the Congress or the law enforcement community fail to recognize that the traditional criminal sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs which, with

its inevitable attendant violence, is plaguing the country. Clearly, if law enforcement efforts to combat racketeering and drug trafficking are to be successful, they must include an attack on the economic aspects of these crimes. Forfeiture is the mechanism through which such an attack may be made. ·

Senate Report at 191 and 1984 U.S.Code Cong. & Admin.News 3374.

Both sections provide that the assets seized are to be applied to defray expenses incurred by the government in drug law enforcement. 21 U.S.C. § 881(e).

The similarity of function and purpose of § 881 and its criminal counterpart, § 853, show that both sections share punitive and remedial goals. The Senate Report describes forfeiture as "an attack on the economic aspects" of drug crime, necessary "to deter or punish the enormously profitable trade in dangerous drugs." *Id.*

■ Retribution and deterrence are not legitimate nonpunitive governmental objectives. *Bell v. Wolfish*, 441 U.S. 520, 539 n. 20, 99 S.Ct. 1861, 1874 n. 20, 60 L.Ed.2d 447 (1979). On the other hand, the application of property seized towards the government's enforcement expenses, *see* 21 U.S.C. § 881(e), is a well-recognized remedial purpose. *See, One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 238, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972).

■ The presence of both punitive and remedial goals does not of itself convert a civil statute into a criminal measure, or vice versa. To some degree all civil forfeiture acts as a deterrent to owners of property, if only to encourage them to take all reasonable care their property is not put to an illegal use. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 690–91, 94 S.Ct. 2080, 2095–96, 40 L.Ed.2d 452 (1974). Indeed, the application of ordinary tort law usually has a deterrent effect.

The material inquiry is not whether civil forfeiture is punitive in purpose and effect. It usually is. The question is whether the forfeiture serves some alternate purpose as well, and whether the penalty inflicted is excessive in relation to that alternative purpose. *See Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963).

■ The interest protected by the Eighth Amendment prohibiting "excessive" punishment is similar to that protected by the due process clause of the Fifth Amendment. Due process "protect[s] ... the individual against arbitrary action[s] of government," *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) (citation omitted), including the imposition of civil penalties so "grossly excessive" as to be oppressive. *Waters–Pierce Oil Co. v. Texas*, 212 U.S. 86, 29 S.Ct. 220, 53 L.Ed. 417 (1909). The government may not prescribe a penalty "wholly disproportioned to the offense and obviously unreasonable." *Saint Louis, I.M. & S. Railway Co. v. Williams*, 251 U.S. 63, 67, 40 S.Ct. 71, 73, 64 L.Ed. 139 (1919). Even where a penalty may serve both compensatory and punitive ends, the government may "no more assess excessive damages than ... impose excessive fines." *Standard Oil Co. v. Missouri*, 224 U.S. 270, 286, 32 S.Ct. 406, 411, 56 L.Ed. 760 (1911).

■ Where an owner has done all that can reasonably be expected to prevent the proscribed use of the property, a civil forfeiture "would simply be an arbitrary act, serving no legitimate government interest, oppressive and harsh, and in our view contrary to the Fifth Amendment." *United States v. One Tintoretto Painting*, 691 F.2d 603, 608 (2d Cir.1982) *citing Calero–Toledo v. Pearson Yacht Leasing Company*, 416 U.S. 663, 689–90, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974). Similarly, where an owner negligently or wilfully permits property to be used in violation of the criminal law, due process requires that a civil penalty bear some reasonable relation to the purpose of compensating the government for its efforts in attempting to discover the violations, to prosecute the violators, and to avert or mitigate the consequent harms.

In *Halper*, statutory penalties for 65 violations of the False Claims Act, amounting to over $130,000, were sufficiently unrelated to the government's losses of $585

from Medicare overcharges and approximately $16,000 in costs for investigating and prosecuting the offender as to constitute a criminal penalty. 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Double jeopardy prohibited the government from imposing first a criminal punishment and then a civil penalty for the same conduct where the civil judgment is not "rationally related to the goal of making the Government whole." *Id.* 109 S.Ct. at 1903.

 The court must thus consider whether forfeiture pursuant to a civil statute and civil procedure is rationally related to a remedial goal. Where a *civil forfeiture* "would be unreasonable and not remotely related to both the actual losses and inexplicable damages incurred by the government," the court should decline to enforce it. *Peterson v. Richardson*, 370 F.Supp. 1259, 1267 (N.D.Tex.1973) *aff'd sub nom. Peterson v. Weinberger*, 508 F.2d 45 (5th Cir.), *cert. denied sub nom. Peterson v. Mathews*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975) (reducing applicable penalty under the False Claims Act).

No clear line divides punitive from remedial purposes. *See generally* Clark, Civil and Criminal Penalties and Forfeitures, 60 Minn.L.Rev. 379 (1976). Some decisions have described § 881 as having the "remedial" purpose to diminish the economic power of drug traffickers and deprive them of the instrumentalities useful in their trade. *See United States v. $2,500 in United States Currency*, 689 F.2d 10, 13–14 (2d Cir.1982); *United States v. 6109 Grubb Road*, 708 F.Supp. 698 (W.D.Pa. 1989).

The distinction between incapacitation and deterrence is particularly elusive. *See* Clark, *supra*, at 475–481. In the case of contraband, where possession of the property is unlawful, the government's seizure removes it from circulation for the public good, as in the seizure of controlled substances under 21 U.S.C. § 881(a)(1).

However, there is nothing inherently unlawful about possessing a condominium. A forfeiture in the present case may incapacitate the owner who permits the illegal use, but hardly rids society of a noxious instru-

mentality. Incapacitation could also be accomplished by criminal measures, avowedly punitive, such as imposing heavy fines, or constraining the person's liberty by imprisonment. *See One 1958 Plymouth Sedan*, 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965). It was just such a practice of economically disabling those whom the Stuarts considered dangerous that led to the incorporation in the English Constitution of the precursor to the excessive fines clause of our Eighth Amendment. *Browning–Ferris Industries*, 109 S.Ct. at 2916.

The aim of compensating the government for its efforts to prevent or mitigate the harms caused by the property's unlawful use is a remedial goal. That harm consists not only of the illicit profits from the actual drug sale, but the severe collateral consequences of facilitating drug traffic, such as drug addiction, increased drug-related violence, and the government's enforcement costs. All these are ills the drug laws were designed to address. *See* § 101 of the Comprehensive Drug Abuse and Control Act of 1970, *codified at* 21 U.S.C. § 801(2) and H.Rep. No. 91–1444, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4566, 4573; S.Rep. No. 225, 98th Cong., 1st Sess. 191, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3374; and *United States v. $2,500 in United States Currency, supra*, at 13 n. 2.

While the entire magnitude of the national drug problem cannot be laid at the feet of any one drug offender, *cf. United States v. A Parcel of Land with a Building Located Thereon*, 884 F.2d 41, 44 (1st Cir. 1989), the government is entitled to compensation because of the injury inflicted by Levin's conduct. The Supreme Court has recognized that assessing damages is not an exact pursuit, and involves an element of "rough justice." *Halper*, 109 S.Ct. at 1902.

An imprecise formula, such as double damages, may pass muster under constitutional scrutiny. *See id.* at 1900; *Missouri Pacific Railway Co. v. Humes*, 115 U.S. 512, 522–23, 6 S.Ct. 110, 113–14, 29 L.Ed.

463 (1885). However, forfeiture is a penalty without clear limits. The value of the property is not inevitably related to the harmfulness of the use to which it is put. *See United States v. Busher*, 817 F.2d 1409, 1414 (9th Cir.1987) (forfeiture under 18 U.S.C. § 1963(a)) and *South Livonia Road*, 889 F.2d at 1270.

Here, Levin used his home more than once to conduct drug transactions. Although perhaps trivial in their dollar amount, these sales are quite serious in their collateral consequences. The maintenance of the programs to deal with drug problems is expensive. Moreover, there were immediate costs to the costs of the federal government in bringing this proceeding, and to Suffolk County for its law enforcement efforts, which may be compensated from the proceeds of any forfeiture. *See* 21 U.S.C. § 881(e)(1)(A) and 19 U.S.C. § 1616(a)(2).

Forfeiture of Levin's approximately $70,000 interest in the condominium does not seem a grossly excessive amount for his share of the costs of remedying the ills occasioned by drugs. Though there may be cases where further elaboration of the government's loss would be warranted, this is not a forfeiture that stands near the line between remedy and punishment. *See South Livonia Road*, 889 F.2d at 1270.

Forfeiture in this case is a civil penalty that offends neither due process nor the Eighth Amendment.

## IV.

The court finds the government has established, and Levin has failed to rebut, that his condominium is subject to forfeiture under 21 U.S.C. § 881(a)(7). The forfeiture does not offend the Constitution. The government's motion for summary judgment is granted, and claimant's motion to dismiss is denied.