**UNITED STATES of America, Plaintiff,**

v.

**REAL PROPERTY: 835 SEVENTH STREET RENSSELAER, RENSSELAER COUNTY, NEW YORK, Defendant.**

No. 91–CV–999.

United States District Court,
N.D. New York.

April 26, 1993.

Gary L. Sharpe, U.S. Atty., N.D.N.Y., Office of U.S. Atty., Albany, NY (William C. Pericak, Asst. U.S. Atty., of counsel), for plaintiff.

Richard Habiniak, claimant pro se.

Hollie E. Bethmann, Albany, NY, for claimant Habiniak.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

■ Presently before the court is plaintiff's motion for summary judgment (Fed. R.Civ.P. 56) in the instant real property forfeiture action brought pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, § 511(a)(7), 21 U.S.C. § 881(a)(7). In opposition, claimant Richard Habiniak argues that the action is barred by both the Eighth Amendment's Cruel and Unusual Punishment Clause and the Fifth Amendment's Double Jeopardy Clause. Despite suggestions by the court, the claimant has failed to raise these defenses in the form of a cross-motion for summary judgment. However, because the issue is potentially dispositive of the instant action, the court treats claimant's Eighth Amendment defense as a cross-motion for summary judgment[1] and grants judgment for the claimant. For obvious reasons the court does not reach claimant's Fifth Amendment challenge.

## I. BACKGROUND

On May 23, 1989, a confidential informant working for the Rensselaer Police Department made a "controlled buy" of 6.82 grams of marijuana from claimant Richard Habiniak while on the premises of the defendant property. Verified Complaint ("Compl.") ¶ 5(a) and attached affidavits. Habiniak thereafter was arrested on August 29, 1989 pursuant to an arrest warrant and a consensual search of the defendant premises was conducted. *Id.* The search uncovered approximately six (6) ounces of marijuana packaged for sale, plastic baggies, a scale, and approximately $415 in United States currency. Compl. ¶ 5(b).

Habiniak was charged with Criminal Sale of Marijuana in the Fourth Degree (N.Y.Penal Law § 221.40), Criminal Possession of Marijuana in the Fourth Degree (N.Y.Penal Law § 221.15), and Criminally Using Drug Paraphernalia in the Second Degree (N.Y.Penal Law § 220.50(2)), all Class "A" misdemeanors. Claimant's 11/2/92 Memorandum, p. 1. Thereafter, claimant pled guilty to the single charge of Criminal Possession of Marijuana in the Fourth Degree, also a Class "A" misdemeanor. *Id.* He was sentenced on January 10, 1990 in Rensselaer City Court to three (3) years probation and fined One Thousand ($1,000.00) dollars together with a Sixty–Two ($62.00) Dollar surcharge. *Id.* at p. 2. All other charges against the claimant were dismissed. *Id.*

The instant action was commenced by verified complaint on September 5, 1991 wherein the plaintiff United States seeks to forfeit the defendant property pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, § 511(a)(7). 21 U.S.C. § 881(a)(7). Initially representing himself pro se and then retaining former and present counsel, Mr. Habiniak and members of his immediate family have made commendable efforts to prevent the forfeiture of the defendant property. Without elaboration, suffice it to say that Mr. Habiniak has been diligent in his efforts to protect the property which, this court has found, serves the primary function of housing the Habiniak family. *See* Bench Decision, 10/13/92 motion calendar. This defense has manifested itself in a number of motions to dismiss made by claimant either through himself or his various attorneys, a suppression hearing, and the instant motion. Now, in response to the government's motion for summary judgment of forfeiture, the court reviews the constitutional defenses enumerated above in the context of

---

1. Although the claimant here has not moved for summary judgment, it is well established that "[t]he trial court ... ha[s] power on its own motion to enter summary judgment against the party who was the original mover." *Morrissey v. Curran*, 423 F.2d 393, 399 (2d Cir.) *cert. denied*, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970); *Doe v. United States Civil Serv. Com.*, 483 F.Supp. 539, 571 n. 29 (S.D.N.Y.1980); *Gerber v. Longboat Harbour North Condominium, Inc.*, 757 F.Supp. 1339, 1341 (M.D.Fla.1991).

the Second Circuit's most recent pronouncement in this area—*United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive*, 954 F.2d 29 (2d Cir. 1992), *cert. denied sub nom., Levin v. United States,* —— U.S. ——, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992) (*"Whalers Cove"*).

## II. DISCUSSION

### A. Eighth Amendment–General Application

In *Whalers Cove*, the Second Circuit explored the application of the Eighth Amendment's Cruel and Unusual Punishment Clause to civil forfeitures. *See generally, Whalers Cove*, 954 F.2d 29. In doing so, the court relied on *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) for the proposition that civil sanctions imposed following a criminal sentence could, if found to be "overwhelmingly disproportionate to the goal of compensating the government," constitute punishment within the meaning of the Constitution. *Id.*, at 34 citing *Halper*, 490 U.S. at 442, 109 S.Ct. at 1898.

Although somewhat attenuated to civil forfeitures, the Supreme Court's pronouncement in *Halper* applies in the following manner. In *Halper*, the Court applied a "rule of reason" to a civil sanction (imposed under a Medicaid fraud statute) to determine whether it rationally related to the goal of compensating the government. *Id.* Finding that it did not, the Court presumed the sanction to be punitive. It then shifted the burden to the government to prove otherwise through an "accounting of [its] damages and costs." *Id.* The *Whalers Cove* case notes:

> The [Supreme] Court cautioned, however, that the burden of accounting for a civil sanction would fall on the government only in the "extreme case", and that leeway was to be given the government's attempt to achieve "rough remedial justice," particularly in view of quantifying the "precise amount of the Government's damages and costs."

*Id.*

However, the Second Circuit went on to note that where an accounting is appropriate (i.e. extreme cases as determined under a rule of reason analysis):

> *Halper* requires a district court to compare the government's proven damages and costs against the sanction the government seeks to impose. Following an accounting, a sanction must be classified as punitive when the size of the sanction can not fairly be attributed to remedial purposes, "but rather can only be explained as *also* serving either retributive or deterrent purposes." 490 U.S. at 448, 109 S.Ct. at 1902 (emphasis added). The amount in excess must be deemed punishment.

*Whalers Cove*, 954 F.2d at 35.

Thus, a civil sanction is justified as long as it accomplishes the remedial purpose for which it was instituted. Under the Medicaid fraud statute, the purpose was to compensate the government for lost revenue and enforcement costs incurred in retrieving the lost dollars. Where the assessed penalty exceeds the remedial purpose of the statute, the amount in excess of the remedial purposes must be deemed punitive. In turn, any civil sanction that in effect is punishment invokes the protection of the Eighth Amendment which is a "personal" and "humane" limitation on the government's ability to punish an individual. *Whalers Cove*, 954 F.2d at 35. Once the Eighth Amendment attaches, that is, once a portion of the civil sanction is deemed punitive, a separate analysis must be undertaken to determine whether the punitive punishment is repugnant under the Cruel and Unusual Punishment Clause.

■ The reasoning of *Halper* was then applied to civil forfeitures. In so doing, the *Whalers Cove* court articulated a number of "legitimate civil purpose[s]" for civil forfeitures—namely: "remov[ing] instrumentalities of crime from general circulation and prevent[ing] further illicit use of harmful objects"; "imped[ing] the success of the criminal enterprise by eliminating its resources and instrumentalities"; and "compensat[ing] the government's investigation and enforcement expenditures." *Whalers Cove*, 954 F.2d at 35–36 (citations omitted). From these articulated "purposes" the court was able to align *Halper* with civil forfeiture and apply its reasoning thereto. The *Whalers Cove*

court concluded that where the "purpose" of the civil sanction under civil forfeiture statute does *only that* (i.e. only removes the criminal instrumentality from circulation, etc.) the sanction, no matter how large, cannot be said to be punitive and no Eighth Amendment right attaches. *Id.* at 36.

### B. Substantiality

However, unlike the Medicaid fraud statutes where the government could easily quantify its losses and expenses (and, *a fortiori*, arrive at the "legitimate purpose" of the civil sanction), civil forfeiture actions are not open to such easy quantification. Indeed, how does one determine whether forfeiture of the defendant *res* serves *only* the purpose of removing "an instrumentality of crime," or whether there are *other* primary or secondary effects of forfeiture?

Apparently recognizing that many civil forfeiture "defendants" like the one now before the court serve dual functions (one being legitimate, the other being criminal), and further realizing that forfeiture affects the rights of their owners, the *Whalers Cove* court determined that in the context of a civil forfeiture the constitutional protection afforded by the Eighth Amendment would attach *unless* the defendant is itself shown to be "culpable." *Whalers Cove,* 954 F.2d at 36. The defendant *res* is deemed "culpable" when it "it has been used substantially to accomplish illegal goals . . . ." *Id.* Where the *res* is found to "culpable," the remedial purpose of removing the instrumentality from circulation is served by complete forfeiture irrespective of the monetary value of the property.[2]

▮▮▮ Thus, in order to determine whether a claimant has any cognizable Eighth Amendment claim in the forfeiture of his property, the district court must make a threshold determination of whether the de-

fendant *res* has been used "substantially to accomplish illegal purposes." Finding no guidance as to the application of this term of art in the case law, this court applied its own "rule of reason" to the instant case. In doing so, and upon oral arguments of the parties, the court determined from the bench on October 13, 1992 that the defendant property was not used substantially to accomplish illegal purposes. Rather, the court found that the substantial purpose of the defendant *res* was to house the Habiniak family and that any illicit use was merely incidental to Mr. Habiniak's personal predilections which did not consume or override the primary function of the *res.* It is upon this finding, then, that the court embarks on the second phase of the Odyssean journey of *Whalers Cove*—a determination of proportionality.

### C. Proportionality

After addressing the issue of culpability, the *Whalers Cove* court held that:

> Where the seized property is not itself an instrumentality of crime, however, *and* its total value is overwhelmingly disproportionate to the value of the controlled substances involved in the statutory violation, there is a rebuttable presumption that the forfeiture is punitive in nature.

*Whalers Cove,* 954 F.2d at 36 (emphasis in original).

Here, the claimant has established an equity interest in the defendant property of $69,778.01. The Government has presented no meritorious challenge to this estimate. The claimant also contends that the value of the illegal drugs sold from the defendant property is Forty–Five ($45.00) dollars. From this the claimant asserts that the forfeiture is overwhelmingly disproportionate to the value of the controlled substance involved in the statutory violation.[3] The government con-

---

**2.** The *Whalers Cove* court was careful to note that the remedial purpose of the forfeiture statute was not "retribution and deterrence." *Id.,* at 36, citing *Bell v. Wolfish,* 441 U.S. 520, 539 n. 20, 99 S.Ct. 1861, 1874 n. 20, 60 L.Ed.2d 447 (1979).

**3.** 21 U.S.C. § 881(a)(7) provides for the forfeiture of real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a violation of the

narcotics laws punishable by more than one year's imprisonment. *Whalers Cove,* 954 F.2d at 33. In order to succeed under 21 U.S.C. § 881(a)(7), the government need merely prove a "nexus" between drug activity and the property. *Id.* The government does not need a predicate conviction, but only probable cause to believe that a crime punishable by a year or more has occurred. *See United States v. In re One 1987*

tends that in valuing the drugs the court must take into account the amounts found during the August 29, 1989 search. When this is done, the government values the drugs at One Thousand–One Hundred and Twenty Five ($1125.00) dollars.

Even assuming that the numbers are as the government contends, the court finds that the value of the home is overwhelmingly disproportionate to the value of the controlled substances involved in the statutory violation. Thus, a rebuttable presumption is created that the forfeiture is punitive in nature. *Whalers Cove* 954 F.2d at 36. However, once such a finding is made, "[t]he government may then account under *Halper* in order to show that the forfeiture serves legitimate civil goals." *Id.* at 37. "Following the accounting, the trial court may then determine whether the government has carried its burden of showing that the sanction is entirely assignable to civil purposes or whether part or all of the sanction is designed to serve punitive purposes." *Id.*[4]

Upon examining the Government's costs and damages, the court finds that the Government has established investigative and enforcement expenditures of approximately $3,600.00. Claimant has objected to that fraction of the government's estimate which is attributable to the investigative expenses of the Rensselaer Police Department in connection with claimant's arrest (approximately $1,000.00). Nonetheless, because neither *Whalers Cove* nor any other Supreme Court decisions have limited the inquiry to expenses incurred by the *federal* government, the court credits the government's costs to its full amount. Thus, any equity above this amount can be deemed punitive for purposes of an Eighth Amendment analysis. Finding

that Mr. Habiniak has a $69,778.01 equity stake in the defendant property, and subtracting the government's expenses therefrom ($3,600), Mr. Habiniak stands to incur a penalty of approximately $66,178.01 if the property is forfeited.

The court must now determine whether this penalty is so disproportionate to the crime allegedly committed as to violate the Eighth Amendment's prohibition of cruel and unusual punishment. In *Whalers Cove* the Circuit explained that:

> [t]he Cruel and Unusual Punishment Clause prevents the imposition of a punishment which is "grossly disproportionate" to the crime committed. *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637 (1983). Three factors are relevant to this inquiry: (1) the inherent gravity of the offense; (2) the sentences imposed for similarly grave offenses in the same jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions.

*Whalers Cove,* 954 F.2d at 38.

#### i) Inherent Gravity of the Offense

The *Whalers Cove* court found that they had no cause to linger over the first factor, stating that the Supreme Court "has recognized the serious threat to individuals and society posed by drug offenses in the context of the Eighth Amendment analysis." *Id.,* (citing *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). The fact that the *Whalers Cove* case concerned the sale of cocaine and this case concerns the sale of marijuana is of no moment. The serious threat to individuals and society from the attendant violence of the drug trade is

---

*Jeep Wrangler etc.,* 972 F.2d 472 (2d Cir.1992); *United States v. Certain Real Property and Premises known as 38 Whalers Cove Drive,* 747 F.Supp. 173, 175 (E.D.N.Y.1990). Here the government contends that the existence of the 6 ounces of marijuana found at the Seventh Street location establishes probable cause that the drugs were possessed with intent to distribute in violation of 21 U.S.C. § 841. Section 841 punishes such crimes by a term of incarceration in excess of one year.

4. In *Whalers Cove,* the court found that the forfeiture was overwhelmingly disproportionate com-

pared to the value of the relevant drug transaction. *Id.* at 37. Thus, a rebuttable presumption was likewise created that the forfeiture was punitive in nature. *Id.* However, in that case the Second Circuit found there that there was no need to allow the government to rebut the presumption through an accounting because even assuming *arguendo* that the entire amount of the claimant's equity was punitive and not civil, forfeiture did not "violate the constitutional limits on punishment set by the ... Eighth Amendment." *Id.* at 37–38.

beyond peradventure. Whether one drug is inherently more "dangerous" to the user than the other is irrelevant.

*ii) Sentences Imposed in this Jurisdiction*

Moving to the second factor, the court examines the possible punishments which could have been imposed had the claimant been convicted of the statutory violation. Of course, the comparison between the "sentences imposed" and the punitive nature of the forfeiture is the proverbial comparison of applies to oranges. It is unclear whether the comparison is between the possible *fine* which could be imposed and the punitive nature of the forfeiture; or if the comparison is between the total monetary value of the possible *sentence* which could be imposed (fine plus cost of incarceration[5]) and the punitive nature of the forfeiture. If it is the latter, a number of questions instantly arise. First, does the court determine whether *both* a fine and imprisonment *would have been imposed* and then, after answering this question, combine the monetary value of both for purposes of comparison? Or, does the court simply take the upper end of each range, combine them, and then use this figure for comparison? And if maximum fines and terms of incarceration are used, does the claimant get a "set-off" for those fines he actually paid or time he actually served under the criminal justice system?

Unfortunately, *Whalers Cove* does not answer these questions because, quite frankly, the situation did not require it. In *Whalers Cove*, the total value of the property was within or proximately close to the maximum fines allowed under the federal and state guidelines and hence the Court had no reason to drag the analysis to the logical extreme. *Id.* at 38. Here the court is not so blessed.

Nevertheless, the court is influenced by two factors which compel a comparison between the possible *fines* which can be imposed in the various jurisdictions and the punitive nature of the forfeiture. The first factor arises from a combination of two aspects of the *Whalers Cove* decision. There,

the Circuit held that the burden was upon the government to show through an accounting of costs and expenses what portion of the forfeiture, if any, was attributable to remedial purposes. *Id.* at 34. It logically follows that the government, as the proponent of forfeiture, would likewise bear the burden regarding proportionality. Also, the Circuit held that two of the relevant factors in the proportionality analysis were the "sentences imposed" for similarly grave offense in this and other jurisdictions. Combining the government's burden with the court's implication that the proportionality comparison was to be between sentences *actually* imposed (the Circuit used the terminology "sentences imposed" as opposed to "sentences which could be imposed"), the onus is necessarily on the government to show this court where the claimant's conduct would fall in each jurisdiction's sentencing range. Yet, because the government has presented no evidence that the instant statutory violation is other than a first offense for the claimant, and because the court is of the opinion that the gravity of the statutory violation for first offenses would merit only a fine in most jurisdictions, the court finds no reason to use potential sentences as a comparative measure. Indeed, the Eighth Amendment analysis is a comparison between sentences which would be imposed under the pertinent criminal justice system for like crimes. It is therefore a comparison between practical reality (the sentence that would be imposed had a crime been committed) and practical reality (the effects of the forfeiture)—not a comparison between fanciful theory and practical reality. Nonetheless, because the analysis tests the "outer confines" of the Cruel and Unusual Punishments Clause, and because no imprisonment is contemplated, the court chooses to use the upper threshold of each sentencing fine range (with one exception) as the appropriate measure of practical reality.

As a second reason for rejecting the cost of incarceration for comparative purposes, the court notes that the costs of incarceration of a defendant, while legally assignable to a defendant in the federal system, are virtually

---

**5.** The United States Probation Department indicates that the present cost of incarcerating a defendant in a federal penitentiary is approximately $1,492.00 per month.

always borne by the government. Again, to skew reality for purposes of this analysis would be unfairly and impractically assigning civil forfeiture a greater significance than even the criminal justice system has in the eradication of drug related crimes. Such is not its purpose and the court declines to expand it in such a fashion.

■ Therefore the court now turns to the applicable federal penalties. Under the Federal Sentencing Guidelines ("Guidelines"), a conviction for possession with intent to distribute less than 250 grams of marihuana[6] carries with it a base offense level of 6. Guidelines, § 2D1.1. Of course, the computation of the actual sentence which would have been imposed under the Guidelines is inherently suspect because the court can never ascertain whether an adjustment for acceptance of responsibility is appropriate (because no actual crime was charged) nor does it have before it claimant's criminal history. Therefore, the court applies a 1 as to criminal history and grants no adjustment for acceptance of responsibility. When doing so, the claimant would have been subject to a term of imprisonment from 0 to 6 months and a fine of between $500 and $5,000. Guidelines, § 5E1.2.

The difference between this sentence and a fine of $66,178.01 is clearly disproportionate and borders on being aberrational. On this basis alone the proposed forfeiture would violate the dictates of the Cruel and Unusual Punishment Clause.

However, the government contends that the analysis cannot begin and end with the Sentencing Guidelines. Rather, the government argues that the court must also address the possible penalty under the pertinent statute to determine proportionality. Section 841 of title 21 of the United States Code allows a maximum penalty of up to five years imprisonment or a fine of up to $250,000, or both, for possession with intent to distribute up to 50 kilograms of marijuana. *See* 21

U.S.C. § 841(b)(1)(D). Thus, the government argues that because claimant's activities could have theoretically subjected him to a fine of $250,000, a fine of $66,178.01 cannot be deemed disproportionate.

Despite the fact that one district court within the Second Circuit has held that "it is the statute, and not the Guidelines, which provides the proper guide to determine seriousness" (*United States v. U.S. Currency in Amount of One Hundred Forty–Five Thousand, One Hundred Thirty–Nine Dollars*, 803 F.Supp. 592 (E.D.N.Y.1992)), this court declines to strictly apply such a rule. Rather, the court shall apply the possibility of high monetary sanctions under 21 U.S.C. § 841 as one of the many factors it will consider, along with the penalty under the Guidelines, to determine proportionality.

Further, the court finds that it would be preposterous to assume for present purposes that the *maximum* penalty allowed by § 841 should be used for the proportionality determination. If ever there would be problem with proportionality it would be in applying the maximum penalty allowed by § 841, which contemplates sales of up to 50 kilograms (50,000 grams), to a punishable crime which involved merely 174.82 grams. It is doubtful that this court, or any other, would assess the full extent of § 841(b)(1)(D). Rather, because the amount of marijuana in the instant case represents a mere .35% of the total to which § 841(b)(1)(D) applies, a proportionate amount of its penalty should be used for instant purposes. This amounts to a mere $875.00—an amount considerably less than would be assessed against the claimant if the defendant *res* is forfeited. In sum, the court finds that a penalty of $66,178.01 would be disproportionate within the meaning of the Eighth Amendment.

### iii) Sentences Imposed in Other Jurisdictions

Moving to the third factor, that is, possible sentences imposed by similar jurisdictions,

---

6. Because an actual conviction is not essential to forfeiture (*see* footnote 3, *supra*), the court assumes for present purposes that the government can establish probable cause to believe that Mr. Habiniak possessed with intent to distribute the 6.82 grams which he sold to the confidential

informant on May 23, 1989 and the six ounces (168 grams) which were found pursuant to the search of his home on August 29, 1989. Thus, the court analyzes possible penalties under the assumption that Mr. Habiniak possessed with intent to distribute 174.82 grams of marijuana.

the court finds that neither New York nor its sister states to the east impose a penalty approaching the instant forfeiture.

When applying New York criminal law, the Government argues that two separate crimes have been committed—the "sale of 6.82 grams of marijuana and the possession of 6 ounces of marijuana."[7] Both are Class A Misdemeanors under New York law with a maximum term of 1 year imprisonment, a maximum fine of $1,000, and a $90 surcharge for each. N.Y.Penal Law §§ 70.15; 80.05; 221.15; and 221.40. Yet, even when combined the total penalty for these two offenses pales by comparison to the penalty which will be imposed upon the claimant if the defendant res is forfeited.

The law of Vermont applies harsher penalties for the possession and sale of marijuana than does New York but still the penalties do not even approach the impact of the putative forfeiture. Possession of between two ounces and twelve ounces carries with it a maximum sentence of not more than three years imprisonment or a fine of not more than $10,000, or both. Vt. T.18 § 4230(a)(2). Sale of less than one-half ounce of marijuana subjects an individual to a maximum sentence of two years imprisonment or a fine of not more than $10,000, or both. Vt. T.18 § 4230(b)(1). Again, even when combined, the possible penalty still represents only 30% of the penalty that would be imposed under the instant forfeiture. Whether this is grossly disproportionate within the meaning of the Eighth Amendment is a closer question but one which the court answers in the negative.

Under Massachusetts law, possession of marijuana is punishable by imprisonment of not more than six months and a fine of not more than $500, or both. Ma.Gen.L.Ann., Ch. 94C, § 34. Possession with intent to distribute is punishable by up to two years imprisonment, a fine of between $500 and $5,000, or both. Ch. 94C, § 32C. These penalties when combined approach the federal standard. There is little to convince the court that the instant forfeiture would be proportional to a conviction in the State of Massachusetts.

In Connecticut, the possession of more than four ounces of a cannabis-like substance calls for a sentence of not more than five years, or a fine of not more than $2,000, or both. Ct.Gen.Stat. § 21a–279(b). Again, a penalty exceedingly less than will be imposed if the instant res is forfeited.

### D. Analysis

The decision here is a close one. The factors stack up on both sides and there are, within the confines of the *Whalers Cove* framework, reasons both to deny and to grant forfeiture. Because there is no bright-line test the numbers can be construed in a number of permutations that both support and reject forfeiture. The government asserts that proportionality for purposes of forfeiture must be analyzed in the context of past forfeiture decisions, pointing specifically to a case where a $20,000 pleasure yacht was forfeited because one marijuana cigarette was found aboard it. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 693, 94 S.Ct. 2080, 2096, 40 L.Ed.2d 452 (1974). However, this case was decided at a time when Eighth Amendment challenges were not recognized within this circuit for civil forfeitures. To use it now to defeat the same would be circular reasoning indeed. Until the Supreme Court passes upon the Eighth Amendment issue, this court must follow the prevailing decision of the Second Circuit which clearly holds that Eighth Amendment protection applies in certain circumstances.

Despite the Circuit's efforts to guide the district courts, there remains, as perhaps there should, a gray area where Eighth Amendment protection is neither clearly mandated nor clearly prohibited. Terms such as "grossly disproportionate" and "aberrational" are amorphous terms which, even when applied under the strictest of legal standards, transcend narrow definition. Rather, the terms must be applied both in the framework of the Circuit's opinion and in the context of this case. The facts of the case will be determinative.

The effects of the drug trade and its attendant violence is a scourge upon the coun-

---

7. New York does not have a crime of possession with intent to distribute marijuana.

try of demonic proportion. So devastating is our plight that the country and its leaders have declared a symbolic war on the illegal drug trade. And well they should. However, in this frenzy called a war the court must not lose its bearings but rather must, as it has sworn to do, uphold the constitutional rights of all involved—the average American and the drug dealer alike. Should Mr. Habiniak desire to sell illicit drugs, he most assuredly should feel the full extent of this country's criminal justice system. And likewise, because Congress has determined that civil sanctions in the form of forfeitures should be imposed upon certain property to defer the costs of criminal enforcement and to remove instrumentalities of crime from general circulation, Mr. Habiniak should feel the full effect of this edict as well. But the criminal justice system is a system steeped in a tradition of measured fairness and any comparative exercise must take those principles into account. The forfeiture of this property would go well beyond any punishment the criminal system would impose upon the claimant and would even exceed the lofty goals of the civil forfeiture provisions. *See generally, United States v. Certain Real Property and Premises Known as 38 Whalers Cove Drive,* 747 F.Supp. 173, 178–79 (E.D.N.Y.1990) (discussing legislative history). The practical effect would be to greatly overcompensate the government for the enforcement costs related to this drug sale and would do little to remove "an instrumentality of crime" from the streets. As the district court so aptly stated in *Whalers Cove:*

> [T]here is nothing inherently unlawful about possessing a condominium. A forfeiture in the present case may incapacitate

the owner who permits the illegal use, but hardly rids society of a noxious instrumentality.

*Id.,* at 180.

And the forfeiture of 835 Seventh Street would have little effect in "impeding the success of the criminal enterprise by eliminating its resources and instrumentalities." It can hardly be said that the claimant sold marijuana *because* he owned the property. While the residence might have provided cover which shielded Habiniak's illegal efforts from early detection, forfeiture in itself will not end the enterprise but will simply force the conduct to another location.[8] Owning the home was not a condition precedent to selling marijuana, and there is no indication that the claimant received revenue or the like from the property which enabled him to commence or continue the illegal enterprise. Still further, the financial strain placed upon *this* claimant from forfeiture of his family's home could very well have the effect of increasing claimant's propensity to engage in illegal activities.

The decision is made more difficult because there exists no intermediate position. The legal fiction upon which forfeiture is based makes the property, the defendant, subject only to complete forfeiture. The court is powerless to fashion a just remedy which in this case lies somewhere between the punitive effects of forfeiture and the unwarranted event of outright dismissal. Yet, when the decision between total forfeiture and outright dismissal of the action amounts to the Hobson's choice between protecting the constitutional rights of Mr. Habiniak (to say nothing of his family's [9]) and overcompensating the government for enforcement,

---

**8.** That is, of course, dependent on whether Habiniak chooses to continue the enterprise. This discussion examines the theoretical impact of forfeiture only.

**9.** The court has held in this case that members of Mr. Habiniak's immediate and extended family have no standing to contest the instant forfeiture because they have no legal stake in the property. *See* Order, 8/20/92. Nevertheless, it is impossible to decide the instant matter without contemplating the effect which the forfeiture will have on the four children in the Habiniak family. Claimant has presented argument that the forfeiture of the property would work a deleterious effect upon the entire family because Mr. Habiniak

suffers from Multiple Sclerosis and that three of the four children are "severely handicapped." *See* Bethmann Affidavit, dated 9/22/92. Of course, no sympathy need be extended Mr. Habiniak because it was not his affliction which instigated the instant forfeiture but rather his own free will. By making the choice he did, he came perilously close to jeopardizing the welfare of his family and for this he can blame no one but himself. Nonetheless, the court has assessed the added burden which society will bear if the four Habiniak children are "turned out into the street" and, if it should go that far, become wards of state.

the choice is a clear one. Because there is no middle ground, the court chooses to err in protection of the claimant's constitutional rights.

## III. CONCLUSION

Summary Judgment is granted in favor of the claimant and the action is dismissed with prejudice. The Clerk of the Court is instructed to close the file.

**IT IS SO ORDERED.**